**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **JERRY NEWTON CASTLE,** | ) | |
| **ID # 1371891,** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:11-CV-0380-M-BH** |
| | ) | |
| **RICK THALER, Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent.** | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order* 3-251, this case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the habeas corpus petition should be **DENIED** with prejudice.

**I.  BACKGROUND**

On January 28, 2011, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his convictions for aggravated sexual assault of a child in cause numbers F05-32511-K and F05-32512-K.  Respondent is Rick Thaler, Director of TDCJ-CID.

**A.     Factual and Procedural History**

On May 2, 2005, the State indicted petitioner for aggravated sexual assault of a child on or about March 12, 2005, and for aggravated sexual assault of the same child on or about March 25, 2005. (Clerk's Record ("C.R."):2-3).  He pleaded not guilty and was tried before a jury on May 15-19, 2006.  (C.R.:4).

The evidence at trial established that late on the night of March 29, 2005, police officers were called to investigate a parked car, where they found petitioner and the complaining witness.

1

(R. 5:27-31, 112-13).   One of the officers questioned the complaining witness about their activities because it appeared to him that she and petitioner were kissing and her clothes were in disarray; she eventually confessed that they were kissing.  (R. 5:114-16).  During a search of petitioner's car after his arrest, a pregnancy test was found in the glove compartment.  Petitioner told the police at the scene that it was his wife's test (R. 5:35-39), but the complaining witness testified that it was one she had taken because she feared that she was pregnant by petitioner.  (R. 5:108-09).   The complaining witness's mother was called to the scene and spoke with her daughter, who then told the police officer that she had had sex with petitioner in the past. (R. 5:120-21, 141).  Petitioner denied this when confronted by the police.  (R. 5:122).  He was arrested for a traffic offense.  (R. 5:31-32).

The complaining witness testified at trial that she had sex with petitioner, who was the pastor of her church, a number of times in March of 2005, including during a week she spent at his house with him, his wife, and their young son.  At the time, she was twelve years old and believed that she was in love with petitioner.  Petitioner would ejaculate on her stomach and at times used her t-shirts to wipe her off. (R. 5:55-94).  A physical examination of the complaining witness conducted after petitioner's arrest indicated trauma to her hymen (R. 6:102-05), and DNA testing on two of her t-shirts revealed seminal fluid and all of hers and petitioner's DNA markers; no genetic markers of any third party were found.  (R. 6:54-60).

The State also played a recording of a telephone call after petitioner's arrest between him and the complaining witness in which he confessed to his relationship with her and told her that he loved and wanted to be with her. (R. 5:256-57).  The assistant pastor of the church testified that he listened to another telephone conversation between petitioner and the complaining witness in which

petitioner told her that he loved her and wanted to be with her. (R. 5:187-90). Finally, another pastor in the same district testified that petitioner met with a district committee of pastors, confessed to having a sexual relationship with a minor, offered to resign, and was fired. (R. 5:221).

Petitioner testified, denying ever having sex with the complaining witness and providing alibis for the times she said that they had sex. (R. 7:44-55). He testified that his semen was found on her shirts because either his wife wore them or he used them after having sex with his wife. (R. 7:94). He acknowledged the relationship to the complaining witness on the telephone and admitted to it to the district committee because he mother had threatened to kill him and his family. (R. 7:85-86, 91-92). Petitioner's wife testified and provided alibis for some of the dates, stating that petitioner confessed because of threats from the complaining witness's mother. (R. 6:259-63). Both petitioner and his wife testified that the pregnancy test found in petitioner's car was one the complaining witness took after talking to petitioner's wife about her fears that she might be pregnant by someone else. (R. 6:223; R. 7:61-5). Petitioner's sister, two members of the church, and petitioner's co-worker also testified and provided alibis for some of the dates and times the sexual activity was alleged to have occurred. (R. 6:160-69, 175-83; R. 7:9-11).

The jury found petitioner guilty and sentenced him to forty-five years imprisonment in both cases, to be served concurrently. (R. 8:116, 120). Petitioner's convictions were affirmed on direct appeal. *Castle v. State*, 2008 WL 2840683 (Tex. App.–Dallas, July 24, 2008). His motion for rehearing was denied on October 1, 2008. He did not file a petition for discretionary review.

Petitioner filed state habeas applications in both cases raising the same claims as in his federal petition, as well as some additional claims, on October 23, 2009. (State Habeas Transcript "S.H.Tr."[WR-74,024-01]:2-86; S.H.Tr.[WR-74,024-02]:2-86). On April 1, 2010, the state habeas

court issued findings recommending that relief be denied. (*Id.* at 164-66). On September 29, 2010, the Texas Court of Criminal Appeals dismissed the state applications as not compliant with Texas Rule of Appellate Procedure 73.1. (*Id.* at covers). On October 19, 2010, petitioner filed state habeas applications that again raised the same claims but that complied with the state procedural rules. (S.H.Tr.[WR-74,024-03]:1; S.H.Tr.[WR-74,024-04]:1).[1] On November 23, 2010, the trial court again recommended that the state applications be denied. (*Id.* at 185-88). On January 19, 2011, the Texas Court of Criminal Appeals denied his state applications on their merits without a written order based on the trial court's findings. (*Id.* at covers). Petitioner filed motions for reconsideration or rehearing on January 19, 2011. On January 20, 2011, the Court of Criminal Appeals noted on petitioner's motions that there was "no action taken." (*See Ex parte Castle*, WR-74,024-04 (Tex. Crim. App. January 19, 2011); S.H.Tr.[WR-74,024-04] event date 01/19/11:1).

## B.    Substantive Claims

On January 28, 2011, petitioner filed his federal habeas petition ("Pet.") and a memorandum in support ("Mem.") raising the following grounds for relief:

(1) petitioner was subject to an illegal search and seizure when his car was searched after he was arrested for a traffic offense (ground one);

(2) the trial court erred by:

-preventing defense counsel from asking a proper question during voir dire (ground eleven);

-denying petitioner use of impeachment evidence against the complaining witness (ground two); and

---

[1]  On October 19, 2010, the same date he filed his second set of state applications, petitioner filed motions for reconsideration with the Court of Criminal Appeals. On October 21, 2010, that court noted that there was "no action taken" on these motions. (S.H.Tr.[WR-74,024-01], event date 10/19/10:1; S.H.Tr.[WR-74,024-02], event date 10/19/10:1).

-admitting inadmissible evidence over defense counsel's objection (ground ten);

(3) the prosecution committed misconduct by:

-making multiple comments alluding to petitioner's post-arrest silence (ground seven); and

-giving personal opinions and commenting on evidence outside of the record during jury argument (ground eight); and

(4)  his trial attorney rendered ineffective assistance of counsel by:

-failing to challenge jurors who were biased as a matter of law (ground four);

-failing to utilize state rules of evidence to have impeachment evidence against the complaining witness entered into evidence or to preserve this issue for appellate review (ground three);

-refusing to call defense witnesses requested by petitioner who would have created a reasonable doubt (ground five);

-failing to object to inadmissible extraneous offense evidence (ground six);  and

-failing to object to comments from the prosecutor regarding petitioner's post-arrest silence (ground nine)

(Pet. at 7-10).  Petitioner filed additional supporting documents on March 4, 2011.  Respondent filed a response on July 6, 2011, and provided the state court records.  Petitioner filed a reply brief on September 27, 2011.   In addition, the Court permitted petitioner to supplement his petition on October 25, 2011, with additional affidavits.  On November 23, 2011, respondent filed a response to the supplement, and on December 16, 2011, petitioner filed a reply.

## II.  STATUTE OF LIMITATIONS

### A.    Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for

5

habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).

Because petitioner filed his petition after its effective date, the Act applies.

Title I of the Act substantially changed the way federal courts handle habeas corpus actions.

One of the major changes is a one-year statute of limitations.  *See* 28 U.S.C. § 2244(d)(1).  The one-

year period is calculated from the latest of either (A) the date on which the judgment of conviction

became final; (B) the date on which an impediment to filing an application created by State action

in violation of the Constitution or laws of the United States is removed, if the applicant was pre-

vented from filing by such State action; (C) the date on which the Supreme Court initially recognizes

a new constitutional right and makes the right retroactively applicable to cases on collateral review;

or (D) the date on which the facts supporting the claim became known or could have become known

through the exercise of due diligence.  *See id.* § 2244(d)(1)(A)-(D).

Petitioner's motion for rehearing was denied on October 1, 2008.  He did not file a timely

PDR.  Therefore, his convictions became final at the expiration of the thirty-day period time frame

for filing a PDR after his motion for rehearing was denied.  *See Roberts v. Cockrell*, 319 F.3d 690,

692 (5th Cir. 2003) (holding that, when the petitioner has halted the review process, "the conviction

becomes final when the time for seeking further direct review in the state court expires").

Accordingly, petitioner's convictions became final on October 31, 2008.

Petitioner has alleged no state-created impediment under subparagraph (B) that prevented

him from filing his federal petition.  Nor does he base his petition on any new constitutional right

under subparagraph (C).  As § 2244(d)(1) relates to this case, the one-year statute of limitations is

therefore calculated from the later of (A) the date petitioner's convictions became final or (D) the

date on which he knew or should have known with the exercise of due diligence the facts supporting

his claims.  With regard to subparagraph (D), the facts supporting petitioner's claims became known or could have become known prior to the date his state convictions became final on October 31, 2008.  Because petitioner filed his petition more than one year after his convictions became final, a literal application of § 2244(d)(1) renders his January 28, 2011, filing untimely.[2]

## B.   **Tolling**

Section 2244 mandates that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending *shall not be counted toward any period of limitation under this subsection*."  28 U.S.C. § 2244(d)(2) (emphasis added).  Because November 1, 2009 fell on a Sunday, the one-year statute of limitations ended on November 2, 2009.  When petitioner filed his first state habeas applications on October 23, 2009, ten days remained to file his federal petition.  However, petitioner's first two state applications were not properly filed under § 2244(d)(2) because they were dismissed as being non-compliant with a state procedural rule.  *Wickware v. Thaler*, 404 Fed. Appx. 856, 858-59 (5th Cir. Dec. 13, 2010) (holding that a state writ dismissed pursuant to Tex. R. App. P. 73.1 was not "properly filed" within the meaning of § 2244(d)(1)(A)); *Davis v. Quarterman*, 342 Fed. Appx. 952, 953 (5th Cir. Aug. 27, 2009) (same).  Petitioner did not properly file state applications until October 19, 2010, almost a year after the limitations period had run.  It is well settled that a document filed in state court after the limitations has expired does not operate to statutorily toll the limitations period.  *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).  Therefore, the statutory tolling provision does not save the his federal petition.

---

[2] Petitioner's federal petition is file-marked January 28, 2011, and he also lists that date as the date he placed the petition in the prison mailing system. (Pet. at 9).  That is the date his federal petition was filed.  *See Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).

Nevertheless, the AEDPA's one-year statutory deadline is not a jurisdictional bar and can, in appropriate exceptional circumstances, be equitably tolled. *Holland v. Florida*, 130 S.Ct. 2549 (2010); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998); *cf. Felder v. Johnson*, 204 F.3d 168, 170-71 (5th Cir. 2000) (only "rare and exceptional circumstances" warrant equitable tolling). "The doctrine of equitable tolling preserves a [party's] claims when strict application of the statute of limitations would be inequitable." *Davis*, 158 F.3d at 810 (quoting *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995)). It "applies principally where [one party] is actively misled by the [other party] about the cause of action or is prevented in some extraordinary way from asserting his rights." *See Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)). A habeas petitioner is entitled to equitable tolling only if he shows that: 1) he has been pursuing his rights diligently, and 2) some extraordinary circumstance prevented a timely filing. *Holland*, 130 S.Ct. at 2562, *citing Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). He bears the burden to show entitlement to equitable tolling. *Phillips v. Donnelly*, 223 F.3d 797, 797 (5th Cir. 2000) (per curiam). Courts must examine each case in order to determine if there are sufficient exceptional circumstances that warrant equitable tolling. *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999). The Fifth Circuit has also stated that when a prisoner contends that his ability to file a federal habeas petition has been affected by a state proceeding, the court should look at the facts to determine whether equitable tolling is warranted. *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999).

In his reply brief, petitioner contends that he is entitled to equitable tolling because: 1) his first state applications were dismissed because he raised multiple grounds on a single page, but that the relevant state rule does not address this requirement; 2) the district clerk accepted his

noncompliant applications that were presented in person by petitioner's wife and filed them without comment; and 3) he pursued his rights diligently by promptly filing new applications, as well as motions for reconsideration in the Court of Criminal Appeals. (doc. 25 at 4-6). In *Wickware v. Thaler* and *Davis v. Quarterman*, the Fifth Circuit suggested that equitable tolling may be warranted in cases where the Court of Criminal Appeals has delayed the decision to dismiss a state writ due to noncompliance. *See Wickware*, 404 Fed. Appx. at 861; *Davis*, 342 Fed. Appx. at 954. However, when petitioner filed his first state writs, only ten days remained before the expiration of the one-year limitations period. Even with equitable tolling under *Wickware*, from when he filed his first state writs on October 23, 2009, until when the Court of Criminal Appeals denied his second set of state writs on their merits January 12, 2011, petitioner filed his federal petition sixteen days later, on January 28, 2011. His federal petition is late even with equitable tolling.

As for petitioner's argument that he is entitled to additional tolling because, after his state writs were denied on their merits on January 12, 2011, he filed a motion for reconsideration with the Court of Criminal Appeals on January 19, 2011, such a motion tolls the statutory time period where the motion is entertained by the Court of Criminal Appeals. *See Lookingbill v. Cockrell*, 293 F.3d 256, 261 (5th Cir. 2002); *Emerson v. Johnson*, 243 F.3d 931, 934 (5th Cir. 2001). On January 20, 2011, the Court of Criminal Appeals specifically stated that it would take no action on petitioner's motion, however. While a more recent unpublished Fifth Circuit opinion held that a properly filed motion for reconsideration tolled the statutory time period even where it is not considered by the court, *see Hooks v. Quarterman*, 224 Fed. Appx. 352, 353-54 (5th Cir. March 30, 2007), *Hooks* was concerned only with statutory tolling. Here, only equitable tolling is available to petitioner, so his motion for reconsideration does not save his petition.

9

Nevertheless, in an abundance of caution, the Court proceeds to deny petitioner's claims on the merits. *See Coker v. Thaler*, 670 F.Supp.2d 541, 546 (N.D. Tex. 2009) (holding that, because the ADEPA statute of limitations is not a jurisdictional bar that divests a federal court of habeas jurisdiction, a court is not required to address limitations prior to denying relief).

### III.  PROCEDURAL BAR

Respondent asserts that a number of the claims raised by petitioner are procedurally barred. Petitioner's first, second, seventh, eighth, and tenth grounds were not raised on direct appeal but were raised at the state level in his state habeas applications.  His eleventh ground was raised and rejected on direct appeal and then raised again in his state writs.  The state habeas court stated in its findings of fact that these claims "have been forfeited, waived, are not cognizable in a writ of habeas corpus or are without merit."  The state habeas court then recommended that these claims be denied. (S.H.Tr.[WR-74,024-03]:188; S.H.Tr.[WR-74,024-04]:187).

In general, federal courts may not review a state court decision that rests on an adequate and independent state procedural default unless the habeas petitioner can establish either "cause" for the default and "prejudice attributable thereto" or demonstrates that the failure to consider the federal claims will result in a "fundamental miscarriage of justice."  *Harris v. Reed*, 489 U.S. 255, 262 (1989).  To satisfy the independent and adequate requirements, the dismissal of a claim must "clearly and expressly" indicate that it rests on state grounds that bar relief, *and* the bar must be strictly and regularly followed by state courts and applied to the majority of similar claims. *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001), *citing Amos v. Scott*, 61 F.3d 333, 338-39 (5th Cir. 1995).  The Fifth Circuit has held that a claim is procedurally defaulted if the state habeas court explicitly found that the claim could have, but was not, raised on direct appeal, unless one of the

exceptions has been met. *Brewer v. Quarterman*, 466 F.3d 344, 347 (5th Cir. 2006).

It appears that these claims could have been properly dismissed under Texas state law on a procedural basis either because they were not raised on direct appeal or because they were raised and rejected on direct appeal. However, a claim is procedurally barred at the state habeas level only where the state court "clearly and expressly" indicates that its decision rests on state procedural grounds that bar relief. Here, the state habeas court denied these claims after first stating that they were all forfeited, waived, not cognizable, *or* without merit. The Court of Criminal Appeals then denied relief based on these findings. Because the state court did not clearly and expressly state which claims were barred by a state procedural rule, this Court should decline to find that these claims were not decided on their merits or to impose a procedural bar on them.

## IV.  SEARCH AND SEIZURE

In his first ground, petitioner asserts that his conviction was obtained through the use of an unconstitutional search and seizure. He argues that he was subject to an illegal search and seizure when his car was searched after he was arrested for a traffic offense, and the pregnancy test found during that search was admitted into evidence. (Pet. at 7, Mem. at 9-16).

It is well-settled that a claim that evidence obtained pursuant to an unconstitutional search and seizure was admitted at trial cannot be a basis for federal habeas relief if the state provided an opportunity for a full and fair litigation of the Fourth Amendment claim. *Williams v. Taylor*, 529 U.S. 362, 375 (2000); *Stone v. Powell*, 428 U.S. 465, 482 (1976). A full and fair hearing contemplates that where there are factual disputes, the matter must be considered by the original fact-finding court, and there must be meaningful appellate review available even if unused. *See Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986). The Fifth Circuit has also stated that a

Fourth Amendment claim has been fully and fairly litigated in state court where the material facts were adequately developed in state court and there is no undeveloped evidence sufficient to call into question the reliability of the state court's determination. *Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994); *Streetman v. Lynaugh*, 812 F.2d 950, 958 (5th Cir. 1987).

This issue was not addressed at the trial level because it was not raised by trial counsel. Petitioner did raise this issue at the state habeas level, however, and it was denied on its merits. Petitioner has not alleged any undeveloped facts sufficient to call into question the reliability of the state court's determination. He instead relies on the record from trial and contends that the search incident to his arrest violates *Arizona v. Gant*, 556 U.S. 332 (2009). This argument was raised at the state habeas level. (S.H.Tr.[74,024-04]:34-41). Because this issue was fully and fairly litigated at the state habeas level, petitioner's sixth ground is therefore barred from review by this Court.

### V. AEDPA STANDARD

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's state writs constitute an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89

(Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). Thus, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed

unless the state prisoner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## VI.  TRIAL ERROR

Petitioner alleges that the trial court erred by preventing defense counsel from asking a proper question during voir dire (ground eleven); by denying petitioner use of impeachment evidence against the complaining witness (ground two); and by admitting inadmissible evidence over defense counsel's objection (ground ten). (Pet. at 7, 10).

## A.    <u>Voir Dire</u>

In his eleventh ground for relief, petitioner asserts that his due process rights were violated when the trial court prevented defense counsel from asking a proper question during voir dire examination. (Pet. at 10, Mem. at 82-91).  Defense counsel attempted to ask a veniremember whether he would be biased against the defendant before he heard all of the evidence if the defendant was a preacher.  The prosecutor objected that this was an improper commitment question under state law, and the trial judge sustained the objection. (R. 4:211).  On direct appeal, the state court of appeals held that the trial court did not err in sustaining the objection to the question under state law because the question improperly sought a commitment from the potential juror.  *Castle v. State*, 2008 WL 2840683, slip op. at *2-3 (Tex. App.–Dallas July 24, 2008).  This claim was then denied on its merits at the state habeas level.  This denial is not contrary to federal law.

Federal habeas proceedings do not afford review of a state court's interpretation of its own law.  *Charles v. Thaler*, 629 F.3d 494, 500 (5th Cir. 2011); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998).  Instead, a petitioner is entitled to federal habeas relief due to trial error only if such error is not harmless within the meaning of *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993), because

"the error 'had substantial and injurious effect or influence in determining the . . . verdict.'" (citation omitted).

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict.  It must have had a substantial effect or influence in determining the verdict.  We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the *Brecht* standard, of the error, then we must conclude that it was harmful.

*Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996)).  To be entitled to federal habeas relief due to a trial error, petitioner must show that the error actually prejudiced him.  *Brecht*, 507 U.S. at 637.

Petitioner has not shown trial error, much less any prejudice.  Petitioner's trial counsel was permitted to ask whether anyone was unable to sit as a juror or decide guilt or innocence solely because a defendant in a case involving a sexual relationship might be a preacher or teacher. (R. 4:209).  Defense counsel was also permitted to ask a venire member why he would have a problem if the defendant was a preacher.  *Id*.  Counsel also asked the entire venire whether they would hold such a profession against a defendant.  *Id*.  None of the jurors who stated that they might hold it against a defendant if he were a teacher or preacher in such a case ultimately sat on the jury. (R. 4:211-212, 229).

Petitioner contends that he was harmed because a different juror was ultimately excused from the jury at defense counsel's request, after she informed the trial court that the preacher at her church had "kind of" touched her when she was nine years old.  She also stated that she was able to separate the two situations and could be fair and impartial.  (R. 6:5-20).  This is not evidence that this alleged trial error had a substantial effect or influence on the verdict.  First, the question counsel was not permitted to ask was attempting to commit a juror regarding whether he would be biased if

15

defendant was a preacher.  The excused juror never made any statement that she was biased against preachers; she stated that she could be fair.  Second, even though she stated that she could be impartial, she was excused from the jury and therefore had no role in petitioner's conviction. Petitioner's eleventh ground is without merit.

## B.     Impeachment Evidence

In his second ground, petitioner asserts that the trial court erred because it did not permit certain testimony by the petitioner's wife.  His wife was not permitted to testify that she purchased the pregnancy test found in petitioner's car for the complainant after the complainant expressed concerns to her that she might be pregnant, that she had advised the complainant witness to tell her mother that she was sexually active, and that she gave the test to petitioner to give to the complainant.  Petitioner claims that this evidence could have been used not only to impeach the complainant's earlier testimony that defendant's wife did not purchase the pregnancy test, but could also have provided a motive for complainant's accusations against petitioner, i.e., her mother was going to discover her previous sexual activity.

The trial record reflects that after a hearing outside the presence of the jury, the trial court overruled the State's objection to this evidence, and petitioner's wife gave this testimony. (R. 6:237-47).  Petitioner also gave similar testimony. (R. 7:61-5).  Because the testimony was admitted at trial, petitioner's second ground for relief is also without merit.

## C.     Inadmissible Evidence

Finally, petitioner contends that the trial court erred in admitting minutes from a meeting between petitioner and a group of pastors from his church denomination reflecting that petitioner had confessed he had a sexual relationship with a young girl multiple times. (State's Ex. 25).  One

of the pastors who was at the meeting testified at petitioner's trial, and the minutes were admitted during his testimony although he did not prepare them. (R. 5:206-22). Petitioner contends that the admission of this evidence violated his rights under the Confrontation Clause because the author of the minutes did not testify and was therefore not available to be cross-examined. He cites *Crawford v. Washington*, 541 U.S. 36 (2004), and *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527 (2009), in support. (Mem. at 76-82).

Under the Confrontation Clause of the Sixth Amendment, the accused in a criminal prosecution has the right to be confronted with the witnesses against him. U.S. Const. amend VI. The Confrontation Clause does not preclude the admission of *any* hearsay testimony, however. *Crawford* held that the Confrontation Clause prohibits the admission of out-of-court testimonial statements, such as statements given to a police officer offered for the truth of the matter asserted, unless the witness is unavailable and there was a prior opportunity to cross-examine the witness. *Id.* at 68-69. In *Melendez-Diaz*, decided after petitioner's convictions were final, the Supreme Court held that the Confrontation Clause also prohibits affidavits made by drug analysts stating that a substance was cocaine because these affidavits are testimonial in nature in that they are solemn declarations or affirmations of a fact, which are functionally identical to live testimony. *Id.* at 2532. The Supreme Court has further clarified that victim statements made to the police to assist in an ongoing emergency are not testimonial in nature, *Michigan v. Bryant*, 131 S.Ct. 1143 (2011), but that a blood-alcohol analysis report certifying a defendant's blood-alcohol level is testimonial in nature and cannot be admitted into evidence through the testimony of an analyst who did not perform the test. *Bullcoming v. New Mexico*, 131 S.Ct. 2705 (2011).

Petitioner has shown no violation of his rights under the Confrontation Clause, even

considering the cases handed down after his convictions were final.  First, the minutes of the meeting are not the equivalent of live testimony in the form of a sworn statement to the police, or an affidavit or report by a forensic analyst.  They are a summary of the statements made in a meeting to determine whether to remove petitioner from his job as a pastor at a church and suspend his credentials.  (R. 5:221).  These minutes were not made in furtherance of a prosecution by either the police or an expert who tested evidence on behalf of the State.  They are not testimonial in nature as that term has been defined by the Supreme Court.  Second, while the author of the minutes did not testify, another man who was present at the same meeting testified that the defendant admitted in the meeting that he had had an inappropriate sexual relationship with a minor child.  (R. 5:221). The witness was cross-examined by defense counsel.  Because the witness testified to the same evidence contained in the minutes of the meeting, this ground is without merit, and the state court's denial is not contrary to federal law.

## VII.  PROSECUTOR ERROR

In his seventh and eighth grounds for relief, petitioner contends that the prosecution committed misconduct by making multiple comments alluding to petitioner's post-arrest silence and by giving personal opinions and commenting on evidence outside of the record during jury argument. (Pet. at 9; Mem. at 56-74).

**A.**     **Post-Arrest Silence**

During their testimony at petitioner's trial, petitioner and his wife testified that she bought the pregnancy test found in petitioner's car at the complaining witness's request.  They also testified that petitioner confessed to others because he was threatened by the complaining witness's mother (R. 6:223, 259-63; R. 7:61-5, 85-6).  During cross-examination, the prosecutor asked both petitioner

and his wife why they never provided the information to the police officers investigating this case or the prosecutor's office prior to testifying at trial.  (R. 6:281-87; R. 7:108-12).  The prosecutor commented on this failure during closing arguments.  Petitioner contends that this was an unconstitutional comment on post-arrest silence.

The Supreme Court has held that impeaching a criminal defendant on the basis of silence following a *Miranda* warning about the right to remain silent violates due process.  *Doyle v. Ohio*, 426 U.S. 610, 619-20 (1976); *Puckett v. Epps*, 641 F.3d 657, 666 (2011).  It has also held that *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements, however. *Anderson v. Charles*, 447 U.S. 404, 408-09 (1980).  The Fifth Circuit has further explained that the question is whether a prosecutor's cross-examination and closing argument are designed to draw meaning from silence or raise a negative inference of a defendant's exercise of his right to remain silent, or whether the purpose is to elicit an explanation for a prior inconsistent statement.  *Puckett*, 641 F.3d at 666-67, *citing Pitts v. Anderson*, 122 F.3d 281, 280 (5th Cir. 1997).

The prosecutor's cross-examination of petitioner's wife and his comments in closing statement about her failure to tell authorities either about the pregnancy test or about petitioner being threatened by the complaining witnesses's mother was not prosecutorial misconduct because she was not the criminal defendant.  With regard to the cross-examination of petitioner and related closing statements, petitioner had previously made inconsistent statements.  He told the police officer at the scene, prior to his arrest, that the pregnancy test belonged to his wife.  He had confessed to having sex with a minor in telephone calls and in a meeting with church officials.  At trial, he testified that the pregnancy test belonged to the complaining witness and that he did not have sex with a minor.  The purpose of the cross-examination and the statements at closing was to

elicit a reason for the inconsistent statements, not to draw a negative inference because petitioner remained silent after *Miranda* warnings.  Petitioner's constitutional rights were not violated, and this ground is without merit.

## B.     Extraneous Comments and Evidence

In his eighth ground, petitioner asserts that the prosecutor committed misconduct when he questioned petitioner and his wife about a computer they owned that was not turned over to the police pursuant to a search warrant and whether they had wiped the hard drive clean. (R. 6:288; R. 7:117-18).  He also contends that the prosecutor committed misconduct during closing statements when he referred to the complaining witness's demeanor during her testimony, referred to petitioner being a "con man", and stated that his defense was to call other witnesses liars. (R. 8:9, 25, 27).

Petitioner has not shown that the prosecutor committed misconduct.  He has not shown how questioning petitioner and his wife about a computer they owned and whether the hard drive was wiped clean is misconduct.  As to the prosecutor's closing statement, improper prosecutorial argument violates a criminal defendant's constitutional rights only when the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 180-81 (1986), *quoting Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). Comments that do not manipulate or misstate the evidence do not deprive a defendant of a fair trial. *Darden*, 477 U.S. at 181.  When the prosecutor referred to petitioner as a con man, he was referencing testimony given by one of the State's witnesses.  When he stated that petitioner's defense was to call other witnesses liars, he was summarizing petitioner's testimony that the complaining witness did not tell the truth.  When the prosecutor referred to the complaining witness's demeanor during testimony, he was asking the jury to assess her credibility.  These

comments were not misconduct.  The state court's denial of these grounds is not contrary to federal law, and petitioner's seventh and eighth grounds are without merit.

## VIII.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner claims that his trial counsel was ineffective by failing to: challenge jurors who were biased as a matter of law (ground four); utilize state rules of evidence to have impeachment evidence against the complaining witness entered into evidence or to preserve this issue for appellate review (ground three); call defense witnesses requested by petitioner who would have created a reasonable doubt (ground five); object to inadmissible extraneous offense evidence (ground six); and object to comments from the prosecutor regarding petitioner's post-arrest silence (ground nine). (Pet. at 7-9).

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. art. VI.  The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal.  *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective.  *See* 466 U.S. at 696.  The Court may address the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance."  *Strickland*,

466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

## A.   <u>Voir Dire</u>

In his fourth ground for relief, petitioner contends that his trial counsel was ineffective for failing to challenge venire members who were biased as a matter of law. He claims that one stated that she could not consider probation as a punishment option, and that she and two others stated that they would hold it against petitioner if he failed to testify, but counsel did not seek to have them removed for cause and did not object when they were included in the jury. (Mem. at 34-35). The record reflects that one juror did state at one point that she could not consider probation in a case where it was proven that a person sexually penetrated a child. (R. 4:181-82). The record further reflects that after numerous members of the panel stated that they would hold it against a defendant if he did not testify, the trial judge explained that under the American system, criminal defendants have a constitutional right not to testify, and the State is required to prove its case. (R. 4:190-96). After this point, many of the members of the panel, some identified on the record and some not, stated that they would not take into consideration whether or not the defendant testified. None of

the jurors of which petitioner complains are on the record by name as stating otherwise. (R. 4:195-99). The record also reflects that the trial court and the prosecutor had previously questioned the panel about the range of punishment, and the juror who initially stated she could not consider probation had not raised any objections at that time to the range.

At the state habeas level, defense counsel submitted an affidavit in which he explained that according to his notes, 31 members of the panel were struck for cause, that he did not recall the juror stating that she could not follow the law with regard to probation, and that he would suppose that either he, the prosecutor, or the trial judge would have caught this. After the trial judge further explained a criminal defendant's Fifth Amendment rights, many of the panel members nodded their heads and spoke up that they could follow the law. Counsel spoke to petitioner about these jurors, and they concluded that they were not going to strike people on this basis because they had liked other answers given and were very sure that petitioner was going to testify. (S.H.Tr.[WR-74,024-04]:174). The state habeas court found that trial counsel was not ineffective in this respect. *Id*. at 186. This decision is not an unreasonable application of the *Strickland* standard.

The Sixth and Fourteenth Amendments guarantee a defendant a right to an impartial jury *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). The Fifth Circuit has held that counsel can be considered ineffective for failing to challenge veniremembers who specifically state that they cannot be fair and impartial to the defendant. *Virgil v. Dretke*, 446 F.3d 598, 609-610 (2006). However, in *Virgil*, the Fifth Circuit also held that defense counsel was not ineffective for failing to challenge jurors who answered "no" when asked whether they could fairly consider the testimony of a person with a prior conviction because, in the context of the entire voir dire, there was no evidence that these jurors were biased towards the defendant. *Id*. at 608-09.

23

In this case, none of the three jurors petitioner identifies stated that they could not be fair and impartial to petitioner. They instead expressed concerns over a defendant's decision not to testify, and one of them stated that she could not consider probation in a case where there was evidence of penetration of child. In *Irvin v. Dowd*, the Supreme Court defined an impartial juror not as one who has no preconceived notions, but instead, one who can lay aside his impression or opinion and render a verdict based on the evidence presented in court. *Irvin*, 366 U.S. at 723. Defense counsel provided an affidavit explaining that he chose not to strike these three jurors because they gave answers at other times during voir dire that he and petitioner liked. The record also reflects that numerous members of the panel were stricken for cause. (R. 4:225-26). Given that none of these three jurors ever expressed that they could not be fair and impartial towards petitioner and that petitioner did, in fact, testify at trial, trial counsel's trial strategy of accepting these three jurors based on their other answers during voir dire was not ineffective.

## B.      Failure to Object

In his sixth and ninth grounds, petitioner asserts that counsel was ineffective for failing to object to inadmissible extraneous offense evidence and for failing to object to comments from the prosecutor regarding petitioner's post-arrest silence. (Mem. at 48-55, 74-76). The state habeas court found that counsel was not ineffective in this regard. This conclusion is not an unreasonable application of the *Strickland* standard.

Petitioner first complains that his attorney did not object to the prosecutor questioning the assistant pastor of petitioner's church about his characterization of petitioner as a "con man." During re-direct examination, the prosecutor asked about defense counsel's questions about petitioner being a caring pastor. In explaining his characterization of petitioner as a "con man," the

assistant pastor testified about petitioner's increasing disinterest in preaching on Sundays, his interest in obtaining church donations from a woman shortly after she received her social security check, and a $2500 loan taken out by the church from the district board for heating and air conditioning repairs that were never done with no accounting for the money.  (R. 5:199-204). Petitioner contends that his attorney was ineffective for failing to object to this testimony because it was inadmissible extraneous offense testimony.

Assuming that this evidence was inadmissible and that counsel was ineffective for failing to object to this testimony, petitioner has failed to show that he was prejudiced by this failure.  In addition to the complaining witness's testimony, the State presented DNA evidence establishing that petitioner's semen was on two of her t-shirts, physical evidence that the complaining witness had had sex, testimony from several witnesses that petitioner confessed to the charged offenses in person and by telephone, and a recording of a telephone conversation between petitioner and the complaining witness in which he confessed to the offenses.  Additional testimony regarding petitioner's role as the pastor of the church had no reasonable probability of affecting the outcome of the trial.

With regard to petitioner's claim that counsel was ineffective for failing to object to the prosecutor commenting on his post-arrest silence, there was no error in the prosecutor's questions or closing remarks.  Therefore, counsel was not ineffective for failing to make this objection.  *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) (holding that the failure to make meritless objections or motions does not constitute deficient performance).

## C.    Failure to Present Evidence

In his third ground for relief, petitioner asserts that trial counsel was ineffective for failing

to have impeachment evidence against the complaining witness entered into evidence.  In his fifth ground for relief, petitioner alleges that his trial counsel was ineffective for failing to call defense witnesses who would have created a reasonable doubt. (Mem. at 41-48).

As discussed, the impeachment evidence regarding the pregnancy test was in fact presented through the testimony of petitioner and his wife.  Counsel was not ineffective in this regard.

Petitioner also contends that counsel was ineffective for failing to call certain witnesses for the defense.  At the state habeas level, he submitted affidavits from Patricia Frost, Paula Popchoke, and Cordelia Berry about their willingness to testify on his behalf and the testimony they would have given if called. (S.H.Tr.[WR-74,024-04]:138-144).  In his affidavit at the state habeas level, defense counsel explained that he did not call Patricia Frost as a witness because she told him that petitioner had led the complainant on, that she did not believe that they had had sex, but that she thought that the relationship was too close, and that petitioner would sit too close to her at times.  Based on these statements, counsel believed that the prejudicial value of her testimony would outweigh any benefit. He did not call Paula Popchoke because she was never mentioned to him.  He did not call Cordelia Berry because after speaking to her about a potential alibi for petitioner, she changed the dates she had given and said that petitioner had told her to change the dates.  Counsel was unwilling to present this altered testimony and told petitioner he would withdraw from the case if it happened again. (S.H.Tr.[WR-74,024-04]:190-91).  Petitioner has submitted these affidavits, along with additional affidavits from Patricia Frost and Cordelia Berry disputing counsel's characterization of their proposed testimony.

At the state habeas level, the trial court found that counsel was not ineffective for failing to call additional witnesses.  This finding is not an unreasonable application of the *Strickland* standard.

26

The Fifth Circuit has held that complaints of uncalled witnesses are not favored in habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative. *Day v. Quarterman*, 566 F3d 527, 538 (5th Cir. 2009). To prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *Day v. Quarterman*, 566 F3d at 538; *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). The record reflects that counsel made the strategic decision not to present additional evidence at trial from two of the witnesses after interviewing them. Furthermore, petitioner has not shown how these witnesses would have benefitted his defense. Patricia Frost states that she would have testified that the complaining witness's motion told her, before the accusations were made against petitioner, that she hoped that her daughter and petitioner would marry. (Mem., Appx. 3). Paula Popchoke states that she could have testified about unspecified "comments" made by the assistant pastor in March of 2005 and could have testified that petitioner never admitted to her that he had intercourse with the complaining witness. (Mem., Appx. 4). Cordelia Berry states that she could have testified as to petitioner's whereabouts on two days on which he was alleged to have had sex with the complaining witness. (Mem., Appx. 5).

The wishes of the complaining witness's mother regarding a marriage is irrelevant to petitioner's guilt or innocence. The fact that he did not admit his guilt to a member of his church is not favorable, and potential alibi evidence would have been cumulative of evidence already presented at trial. In addition to testimony from petitioner and his wife, counsel called petitioner's

sister, two church members, and a co-worker to testify to various issues.  He was not ineffective for failing to call additional, largely cumulative evidence from other witnesses.  Petitioner's ineffective assistance of counsel claims are without merit.

## VIII.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## IX.  RECOMMENDATION

The request for habeas corpus relief pursuant to 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED on this 24th day of February, 2011.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE